```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

-------------------------------x
THOMAS MARRA, JR.,             :
                               :
     Petitioner,               :
                               :
     v.                        :     Civ. No. 3:01CV0368(AWT)
                               :
REMI ACOSTA,                   :
                               :
     Respondent.               :
-------------------------------x

**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Thomas Marra ("Marra"), has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, his petition is being denied.

**I. BACKGROUND**

Marra was charged with one count of murder in violation of Conn. Gen. Stat. § 53a-54a(a). In February 1990, the jury returned a verdict of guilty. Marra was sentenced to a 60-year term of imprisonment. He appealed to the Connecticut Supreme Court, which affirmed the conviction and the sentence. See State v. Marra, 222 Conn. 506 (1992). Thereafter, he filed a petition for a writ of habeas corpus in state court. It was dismissed. See Marra v. Warden, No. CV 93-0001796S, 1998 WL 934917, at *1 (Conn. Super. Ct. Dec. 17, 1998). Marra then appealed that decision to the Connecticut Appellate Court, which affirmed the judgment. See Marra v. Commissioner, 56 Conn. App. 907 (1993)(per curiam). He then sought certification from the Connecticut Supreme Court, which

was denied on March 16, 2000. See Marra v. Commissioner of Correction, 252 Conn. 949 (2000).

Marra initially raised the following claims: (1) during the initial closing argument and the rebuttal argument, the State improperly commented on his failure to testify; (2) the trial court violated his right to a fair trial by giving misleading examples of reasonable doubt during the jury instructions; (3) the trial court improperly charged the jury that it could convict him as an accessory to murder; (4) insufficient evidence was produced at his probable cause hearing to establish that the victim was dead; (5) the trial court improperly admitted testimony regarding lost evidence; (6) the trial court improperly admitted irrelevant physical evidence; (7) the trial court improperly bolstered the testimony of his accomplices during the jury instructions; (8) the trial court constructively amended the charges against him; (9) the trial court improperly marshalled the evidence in favor of the State during the jury instructions; (10) his trial counsel barred him from testifying in his defense; (11) his appellate counsel failed to raise a cognizable issue on appeal; and (12) the State failed to disclose Brady materials. Marra has withdrawn Claims 3, 6, 7, and 9.

## II. **LEGAL STANDARD**

A federal habeas court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the

adjudication of the claim in state court either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Under § 2254(d)(1), clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002).  The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have been interpreted to have "independent meaning."  Williams, 529 U.S. at 404-05 (2000)(O'Connor, J., writing for the Court).  If a State court arrives at an opposite conclusion from the Supreme Court on a legal question, then it is "contrary to" clearly established federal law.  See id. at 412-13.  With respect to the "unreasonable application" clause, if a State court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts", then a federal habeas court may grant the writ.  See Wiggins v. Smith, 539 U.S. 510, 520-521 (2003) quoting Williams, 529 U.S. at 413.  In defining the standard, the Second Circuit cautions that it does not require that "reasonable jurists would all agree," but rather that "some

-3-

increment of incorrectness beyond error is required. . . ." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005).

Finally, in analyzing 2254(d)(2), a State court's findings of fact are presumed to be correct, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Brown v. Alexander, No. 07-1780-pr, 2008 WL 4287864, at *4-5 (2d Cir. Sept. 22, 2008).

Pro se litigants are entitled to a liberal construction of their pleadings, which should be read "to raise the strongest arguments they suggest." Green v. U.S., 260 F.3d 78, 83 (2d Cir. 2001).

## III. DISCUSSION

### A. Claim 1: Improper Prosecutorial Comment

Marra's first claim is that "[d]uring initial and rebuttal closing arguments, the prosecutor made a number of comments and criticism to the jury about petitioner's failure to testify." Application for Writ of Habeas Corpus (Doc. No. 1)("Pet.") at 5. The relevant facts were stated by the Connecticut Supreme Court:

> First, in his initial argument, the prosecutor stated: "There were only four people who knew about this in the garage. Two of them testified in front of you and told you what they knew and what they observed, but you heard from the third one too, Mr. Marra. And what did Mr. Marra say? Well, Mr. Marra said a lot. Basically his testimony corroborates everything that Mr. Spetrino and Mr. Byers told you." The state then proceeded to review several out-of-court admissions made by the defendant that the state argued corroborated the testimony of Byers and Spetrino.
> The defendant also attacks comments made by the state in its rebuttal argument. At trial, the state offered

-4-

evidence that the defendant had purchased airline tickets for the victim, presumably because he had wanted the victim to leave the area. In response to the defendant's closing argument, the prosecutor commented that, "[w]ith respect to tickets, tickets for the airline, you never heard anything about why Mr. Marra is buying [the victim] tickets." At trial, the state also produced evidence that Spetrino had been covered with blood as a result of the beating of the victim, and that the defendant and his wife had provided Spetrino with a gray sweat suit. The state had also produced a letter from the defendant to his wife that could reasonably be construed as a request to her to forget that they had given the sweat suit to Spetrino. In rebuttal argument, the state again commented on defense counsel's closing argument, "[w]ith respect to the gray sweat suit, he never explained why he writes his wife a letter and mentions specifically the gray sweat suit unless it, in fact, happened; that a gray sweat suit was provided Mr. Spetrino on the night of the incident. Never touches that." The state also produced at trial evidence of letters sent by the defendant to several people that could reasonably be viewed as requests to those persons to assist the defendant by eliminating evidence against him. The state commented, "[n]ever touches why three letters immediately come out from Mr. Marra on just after the October 28th interview. Never says why he is mailing letters to Brenda, to Maria, to James Kallman." Regarding several contradictory admissions by the defendant, the prosecutor stated, "[h]ave you heard any reasons why he gave those false, contradictory stories? No. That was completely <u>forgotten by counsel</u>." (Emphasis added.) Finally, the state offered evidence that, after the victim had been killed, the defendant had written a letter, purportedly from the victim, to Thiel, in which he explained that the victim would soon return to Connecticut. The state argued, "[h]ave you heard any legitimate reason why he is writing letters attributed to Alex if not to make it seem by at least one witness, Tammy, that Alex is still alive?"

State v. Marra, 222 Conn. at 531-533. After examining the record, the court concluded that "the state's comments did not clearly deprive the defendant of his constitutional privilege against self incrimination." Marra, 222 Conn. at 535. This court agrees.

A prosecutor violates a defendant's privilege against self-

-5-

incrimination when there is "comment by the prosecution on the accused's silence. . . ." Griffin v. California, 380 U.S. 609, 615 (1965). The comment must "naturally and necessarily" be interpreted by a jury as a comment on the defendant's failure to testify. See U.S. v. Bubar, 567 F.2d 192, 199 (2d Cir.), cert. denied, 434 U.S. 872 (1977).

In Griffin, the Supreme Court only addressed a prosecutor's direct references to a defendant's failure to testify. Id. at 615. While there is precedent that indirect comments violate the Fifth Amendment, see e.g., Horne v. Trickey, 895 F.2d 497, 500 (8th Cir. 1990)(defining indirect references as those that "(1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally take them as a comment on the defendant's failure to testify"), the Supreme Court has not addressed a prosecutor's indirect references to a defendant's failure to testify. See e.g., Freeman v. Lane, 962 F.2d 1252, 1260 (7th Cir. 1992) ("Comments by the prosecutor on the state of the evidence that may indirectly refer to the defendant's silence . . . have not been the subject of direct Supreme Court guidance").

The court construes the language used by the prosecutor in his initial remarks as allowing the jury to infer guilt from Marra's previous out of court admissions, not his in court silence. The petitioner has not provided sufficient grounds for the court to conclude otherwise. See Donnelly v. DeChristoforo, 416 U.S. 637,

646-47 (1974)(emphasizing that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning"); U.S. v. Robinson, 485 U.S. 25, 31 (1988)("we do not think that an appellate court may substitute its reading of ambiguous language for that of the trial court and counsel"). Additionally, the prosecutor's statement during rebuttal was not a direct comment, but rather commentary "on the overall quality of the defendant's evidence. . . ." Marra, 222 Conn. at 535.

In arriving at its conclusion at to this claim, the Connecticut Supreme Court cited its own test of whether the jury would naturally and necessarily take a statement to be a comment on the failure of the accused to testify. See Marra, 222 Conn. at 535. This standard appropriates the language used in Griffin, and thus follows clearly established federal law. Therefore, this claim is being denied.

**B. Claim 2: Reasonable Doubt Instruction**

Marra claims that the "[t]rial [j]udge gave misleading examples of the meaning of proof beyond a reasonable doubt during preliminary instructions to prospective jurors and in his final instructions to the jury." Pet. at 5. The examples, according to Marra, "trivialized the state's burden of proof," and were "implicitly incorporated in the judge's final instructions" thereby diluting the state's burden of proof beyond a reasonable doubt. Petitioner's Traverse (Doc. No. 26)("Reply") at 4-5. This court disagrees.

-7-

### 1. The Reasonable Doubt Standard

In expounding upon the reasonable doubt standard, the Supreme Court has stated that proof beyond a reasonable doubt is not only constitutionally required, but a principle "basic in our law and rightly one of the boasts of a free society. . . ." In re Winship, 397 U.S. 358, 362 (1970)(quotation omitted); U.S. v. Birbal, 62 F.3d 456, 460 (2d Cir. 1995)(stating "that each defendant is presumed innocent, and that this presumption mandates a judgment of acquittal unless the government entirely rebuts it with proof of guilt beyond a reasonable doubt").

Although the reasonable doubt standard is a requirement of due process, it "defies easy explication"; the Constitution "neither prohibits trial courts from defining reasonable doubt nor requires them to do so", and it "does not require any particular form of words. . . ." Victor v. Nebraska, 511 U.S. 1, 5 (1994). Nevertheless, the Second Circuit has cautioned that "attempts to clarify reasonable doubt tend to create more confusion than does the expression itself." Gaines v. Kelly, 202 F.3d 598, 609 (2d Cir. 2000)(citation omitted).

While the use of examples to interpret the standard is not prohibited, "the jury is likely to give undue weight to examples, since they are easier to comprehend, and it may simply compare the defendant's conduct with the example." State v. DelVecchio 191 Conn. 412, 421, 464 n.6 (1983), quoting People v. Shepherd, 63 Mich. App. 316, 322 (1975). See also United States v. Anglada, 524

F.2d 296, 300 (2d Cir. 1975)("[t]he heart of [the reasonable doubt charge] was appropriate enough, but the somewhat confusing parable of the father and a bundle of twigs and the apparent characterization of the standard as quantitative rather than qualitative both might better have been omitted.").

Nevertheless, "not every unhelpful, unwise, or even erroneous formulation of the concept of reasonable doubt in a jury charge renders the instruction constitutionally deficient." Vargas v. Keane, 86 F.3d 1273, 1277 (2d Cir. 1996). The exposition must be considered in its entirety, not in isolation. U.S. v. Shamsideen, 511 F.3d 340, 345 (2d Cir. 2008), citing U.S. v. Weintraub, 273 F.3d 139, 151 (2d Cir. 2001).

Marra cites U.S. v. Doyle, 130 F.3d 523 (2d Cir. 1997), for the proposition that a faulty reasonable doubt instruction is reversible error. In Doyle, the trial court instructed the jury that "[i]f and when the presumption of innocence has been overcome by evidence proving beyond a reasonable doubt that the accused is guilty of the crime charged, then it's your sworn duty to enforce the law and render a verdict of guilty." Id. at 533. The court faulted this instruction for implying "that a person who is actually guilty, in the sense of 'what really happened,' as opposed to the sense of having been legally determined to be guilty, is not entitled to the presumption of innocence throughout trial and deliberations." Id. at 538. The instruction also eroded the reasonable doubt standard in the court's estimation, in that a

juror could "take it upon herself to make a premature evaluation of the case and need not hold the Government to its strict burden if she is otherwise convinced of the accused's guilt." Id.

By contrast, the trial court's instruction here distinguished, using examples, the concepts of "reasonable doubt" and "possible doubt". See Marra, 222 Conn. at 536. In the preliminary instructions, the trial judge gave a hypothetical that compared the two concepts. First, he took an inventory of the jurors' surroundings, describing himself as a man in a black robe sitting on a bench in a courtroom with lawyers and other prospective jurors. The judge concluded that this gave them "every right to believe beyond a reasonable doubt that [he's] a judge." Resp't Mem. Opp. Pet. Ex. B (Doc. No. 22)("Resp't Opp.") at 32 (citing trial transcript). Next, the judge compared the two concepts to the experience of driving down a long straight road as a car in the distance traveled towards the driver. The judge asked the jury rhetorically if they would "get into the first driveway you see until that car gets by you?". Answering in the negative, the judge then stated that while it would be possible that the oncoming car could hit the driver, "[t]he reason that you're not going to get into that driveway is because you're going to stay to the right of the center line, the other car is going to stay to the right of the center line, you're going to pass each other by, and go on your way." Resp't Opp. 32-33 (citing trial transcript).

After reviewing the record, the Connecticut Supreme Court

found no prejudice to the petitioner. See Marra, 222 Conn. at 536. This court agrees. Metaphors and analogies are by nature inexact, and if the trial judge had used his examples in place of a proper reasonable doubt instruction, the situation would be different. However, whereas the trial court in Doyle miscommunicated the reasonable doubt standard itself, the jury here "was fairly and completely instructed regarding the state's burden of proof beyond a reasonable doubt at the conclusion of trial." Marra, 222 Conn. at 537. See State v. Lewis, 220 Conn. 602, 614 (1991)(emphasizing the importance that the "jury was fully and properly instructed at the critical time, after all the evidence and after the arguments of counsel"). Therefore this claim is being denied.

**C. Claim 4: Trial Court Jurisdiction**

Marra claims that the trial court lacked "personal jurisdiction to try petitioner for murder" because during his "hearing of probable cause there was no evidence submitted to establish that the victim was dead." Pet. at 6. The court need not reach his reasons because this court lacks subject matter jurisdiction over this claim.

An application for the writ of habeas corpus may only be entertained if a prisoner is in state custody in violation of the Constitution or laws or treaties of the United States. See 28 U.S.C. 2254(a). Portions of any petition that raise claims that are based on state law grounds are outside the subject matter jurisdiction of a federal court. A state court's interpretation of

-11-

state law binds a federal court sitting in habeas corpus. Bradshaw v. Richey, 546 U.S. 74, 76 (2005), citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); DiGuglielmo v. Smith, 366 F.3d 130, 136-137 (2d Cir. 2004) (emphasizing that state courts are "the ultimate expositors" of state law).

While the Constitution does not require the states to provide criminal defendants with a preliminary hearing, Gerstein v. Pugh, 420 U.S. 103, 119 (1975), Connecticut provides one under its Constitution. See Conn. Const. art. I, § 8 ("No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law. . . .").

The elements of the crime of murder, which was the subject of the probable cause hearing, are derived from Conn. Gen. Stat. § 53a-54. State v. Rasmussen, 225 Conn. 55, 74 (1993)("The elements of intentional murder . . . are (1) intent, (2) causation and (3) death by killing as opposed to death by accident or suicide"). Marra contends that there was insufficient evidence at the probable cause hearing to establish the death of the victim. But this court would have to analyze substantively the statutory elements under Connecticut law to address Marra's claim, something this court can not do sitting in habeas review. See Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002); Frazier v. Huffman, 343 F.3d 780, 789 (6th Cir. 2003)(stating that the technical correctness of evidentiary rulings rather than constitutional

-12-

grounds is not reviewable). Therefore, this claim is being denied.

**D. Claim 5: Admission of Testimony Regarding Lost Evidence**

Marra argues that the trial court improperly admitted testimony concerning 16 bloodstained soil and wood samples that had been removed from his garage and were later lost by the State. In support of this argument, Marra states that if he had access to them, he "could've/would've done his own D.N.A. testing which in most likelihood, would of cleared the petitioner." Reply at 10.

The Supreme Court has characterized various constitutional standards as combining to create "what might loosely be called the area of constitutionally guaranteed access to evidence." Arizona v. Youngblood, 488 U.S. 51, 55 (1988)(citation omitted). In order for the destruction of evidence to violate the Constitution, the evidence must "possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 480 (1984). In Youngblood, the Court stressed that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Youngblood, 488 U.S. at 58.

The Connecticut Supreme Court found that the state did not act in bad faith when it lost the evidence. See Marra, 222 Conn. at 516. Marra has not cited to evidence that would support a contrary conclusion. Moreover, Marra has not demonstrated that the evidence

-13-

possessed exculpatory value. See Illinois v. Fisher, 540 U.S. 544, 549 (2004)(bad faith standard depends not on the importance of contested evidence, "but on the distinction between 'material exculpatory' evidence and 'potentially useful' evidence"). Rather, Marra simply asserts that "the state was aware of the relevance since it was they who sent it for testing and introduced the laboratory results." Reply at 10. Being deprived of relevant, "potentially useful" evidence does not constitutionally establish a violation of a defendant's rights under Youngblood. Therefore this claim is being denied.

**E. Claim 8: Constructive Amendment of the Charges**

Marra claims that the trial court's jury charge on the crime of murder violated his Sixth Amendment right to be informed of the charges against him by "permitting the jury to convict the petitioner on an alternative factual basis. . . ." Reply at 13. Specifically, Marra asserts that he "wasn't aware that at the time of trial . . . the jury would be told they could consider causes of death that petitioner wasn't charge[d] with . . ." Id. at 14. Marra's argument rests on the language of the information, which alleged that he "did assault with a baseball bat, and cause the death of the said Alex Palmieri," and the trial court's instructions, which "could reasonably have allowed the jury to find that the defendant caused the victim's death by assaulting him with a bat and by placing the injured victim into the water while locked inside a refrigerator." Marra, 222 Conn. at 526-27 (emphasis in

-14-

original).

An indictment is constitutional if it (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend", and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." U.S. v. Resendiz-Ponce, 127 S.Ct. 782, 788 (2007). The primary purpose of an indictment is to allow a defendant to prepare his defense based upon the specific crime with which he is charged; it is not meant to serve an evidentiary function. See U.S. v. Juwa, 508 F.3d 694, 701 (2d Cir. 2007). The document "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." U.S. v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008), citing U.S v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998).

Marra argues that the information was constructively amended. To prevail on this claim, he must show that trial evidence "so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of" the information. U.S. v. Rigas, 490 F.3d 208, 227-228 (2d Cir. 2007)(citations omitted); U.S. v. Patino, 962 F.2d 263, 266 (2d Cir. 1992) (flexibility in proof is permitted provided that the defendant was given notice of the core of criminality to be proven at trial).

Marra was sufficiently informed of the core of criminality to

-15-

be proven at trial. The information alleged that he "did assault with a baseball bat, and cause the death of the said Alex Palmieri." Marra, 222 Conn. at 526-27. The Connecticut Supreme Court found that the trial court's instructions "could reasonably have allowed the jury to find that the defendant caused the victim's death by assaulting him with a bat <u>and</u> by placing the injured victim into the water while locked inside a refrigerator." <u>Id.</u> (emphasis in original). Nevertheless, the court found that both ways of causing death are merely two different methods of committing the crime of murder, which the defendant was on notice of when the information was handed down. <u>See id.</u> This court agrees.

At trial, Marra primarily challenged the State's claim that he had been involved, and whether the victim had been killed at all. <u>See id.</u> at 527-31. The Connecticut Supreme Court concluded that Marra "did not challenge the state's allegations regarding the manner in which the victim's death was caused." <u>Id.</u> In fact, he called two witnesses to offer evidence to counter the State's theory that the victim was placed in a refrigerator, and argued in closing that the State had to prove beyond a reasonable doubt that the victim "was hit with a baseball bat, that he was put in a refrigerator, [and] that he was thrown in the water to the exclusion of any other possibilities." <u>Id.</u> at 531. Thus, Marra was not only given constitutionally sufficient notice of the core of criminality to be proven at trial, he was able to prepare a

defense that directly answered the government's theory of the victim's death. Therefore this claim is being denied.

### F. Claims 10 and 11: Ineffective Assistance of Trial and Appellate Counsel

Marra claims that his constitutional rights were violated because his attorney did not allow him to testify despite his "numerous requests." Reply at 17. His trial counsel testified that:

> [I]t was his philosophy, admittedly contrary to generally accepted trial strategy, to encourage his clients to testify. Trial counsel further testified that he advised the petitioner in this instance not to testify because of the existence of the tapes. While he was not certain, trial counsel testified that he believed he told the petitioner that if he wished to testify that he should 'go ahead'.

Marra v. Warden, No. CV 930001796S, 1998 WL 934917, at *3 (Conn. Super. Ct. Dec. 17, 1998). Marra testified that his trial counsel refused to put him on the stand. The state habeas court found trial counsel's testimony to be more credible.

Marra also claims that his appellate counsel was ineffective because she failed to raise on appeal the issue of whether he had been denied a fair trial as a result of some of the jurors seeing him in shackles. The state habeas court agreed with Marra's appellate counsel, who testified that the record was inadequate to provide her with a cognizable issue on appeal. See Marra v. Warden, 1998 WL 934917, at *3-4.

In order to prevail on an ineffective assistance of counsel claim, a defendant must show (1) "that counsel made errors so

-17-

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687 (1984); Roe v. Flores-Ortega, 528 U.S. 470, 476-477 (2000). Strickland qualifies as "clearly established Federal law, as determined by the Supreme Court of the United States." Williams, 529 U.S. at 391. The Second Circuit has also adopted the Strickland test for appellate counsel. See Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992).

The Supreme Court has stated that 28 U.S.C. § 2254(d) restricts a federal habeas court's ability to redetermine credibility of witnesses whose demeanor has been observed by the state trial court but not by the federal habeas court. Marshall v. Lonberger, 459 U.S. 422, 434 (1983); Oyague v. Artuz, 393 F.3d 99, 104 (2d Cir. 2004)(reiterating the requirement to "give deference to findings of fact made by the state court")(internal citation omitted); Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997)(presumption of correctness applies to "historical facts, that is, recitals of external events and the credibility of the witnesses narrating them").

Marra has not provided clear and convincing evidence to rebut the presumption of correctness of the state habeas court's finding that Marra's trial counsel did not keep him from testifying. Also, appellate counsel's decision not to raise an unwinnable issue on

appeal does not constitute constitutional ineffectiveness; the winnowing of issues to eliminate a sure loser is the kind of performance that courts expect from competent counsel. See Horne v. Trickey, 895 F.2d 497, 500 (8th Cir. 1990). Moreover, the defendant has not demonstrated that he suffered prejudice as a result of either decision. Therefore, this claim is being denied.

### G. Claim 12: Withholding of Exculpatory Evidence

Marra claims that the State's Attorney Office failed to fulfill its obligations under Brady v. Maryland, 373 U.S. 83 (1967), by not disclosing certain items, specifically tapes of certain interviews with witnesses to the murder, a notebook, and police reports. The three components to a Brady violation are that "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [prosecution], either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999); U.S. v. Douglas, 525 F.3d 225, 245 (2d Cir. 2008). The state habeas court found that the evidence did not support this claim because Marra's own attorney testified that he had access to the tapes and the notebook. See Marra v. Warden, 1998 WL 934917, at *5. The court also noted that "no credible evidence was offered that any police reports were withheld from the defense that would constitute "Brady" materials." Id.

Marra has not presented clear and convincing evidence that

-19-

this factual finding is not correct. See 28 U.S.C. § 2254(e)(1)("a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Therefore, this claim is being denied.

**IV. CONCLUSION**

The petitioner's Application for a Writ of Habeas Corpus [Doc. # 1] is hereby DENIED. The Clerk is directed to enter judgment in favor of the respondent and to close this case.

In addition, the court concludes the petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). See Barefoot v. Estelle, 463 U.S. 880, 893 (1983). Accordingly, a certificate of appealability will not issue.

It is so ordered.

Dated this 6th day of November 2008 at Hartford, Connecticut.

/s/ AWT
Alvin W. Thompson
United States District Judge